IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

_____

No. 5:12-cv-10/RS-EMT
_____

B.C. Docket No. 11-50182

**WAYNE EUGENE MIDDLETON,**

    **Appellant,**

vs.

**RON PHILLIPS,**

    **Appellee.**

_____

Appeal from the United States Bankruptcy Court
for the Northern District of Florida
_____

This appeal raises two issues: 1) whether the Bankruptcy Court erred in its conclusion that the appellant's home in Panama City Beach, Florida did not qualify for Florida's homestead exemption and 2) whether Florida's homestead law was correctly applied in this case.

In reviewing a bankruptcy court judgment, I review the bankruptcy court's legal conclusions de novo. I must also accept the bankruptcy court's factual findings unless

they are clearly erroneous, and give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses. *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996). *See also* Fed. R. Bankr. P. 8013.

**Background**

The debtor purchased and built a home in Panama City Beach, Florida, in 1998. At that time, the debtor and his wife were residents of Blakely, Georgia. The debtor claims that in 2005, he "manifested an intent to reside permanently" at the Florida home. In 2005, the debtor received a Florida drivers' license and registered to vote in Florida.

In August 2005, the debtor executed and delivered a promissory note to the creditor. That note required the debtor to make payments to the creditor of $50,000 in August 2005, $700,000 in January 2006, and $350,000 when certain property closed for sale. The debtor failed to make the January 2006 payment.

Just prior to defaulting on that note, in December 2005, the debtor transferred his interest in the Georgia home to his wife by quitclaim deed. In October 2006, the creditor initiated a lawsuit in Florida state court against debtor. That case resulted in a September 2007 judgment for $785,000.00 in the creditor's favor. During the pendency of that case, the debtor took additional steps which he claims bolster his Florida homestead contention. In January 2007, the debtor "corrected" the records of the Florida Division of Corporation to reflect that, as registered agent for his Florida business, Granite plus II, LLC, his address was his Panama City Beach home. In February 2007, the debtor first claimed the ad valorem tax exemption on the Florida house. Debtor filed his bankruptcy

petition on April 4, 2011.  He claimed that the Florida home was subject to the Florida homestead exemption.  The creditor objected, and the bankruptcy court sustained the creditor's objection.

**Analysis**

The court below properly applied Florida's homestead laws.  In spite of the "liberal construction" in favor of finding a homestead exemption, the court found that the facts did not support a finding that the Panama City Beach house was exempt.  The appellant has not demonstrated that the court's factual findings were clearly erroneous or that the law was misapplied.

At a minimum, the bankruptcy court properly weighed the following factors indicating that debtor's residence was not Florida: 1) the quitclaim deed and default; 2) debtor's two companies, Middleton Memorials and Southern Vault Service, which are located in Georgia; 3) debtor's Georgia checking account at First State Bank where he deposited his paychecks; 4)  debtor's admission that he spends at least every other weekend in Georgia; 5) debtor's wife of thirty years, with whom he has an intact relationship, still resides in Georgia; 6) debtor's use of a company car which is registered in Georgia; and 7) debtor's affiliation with a Georgia church and Georgia doctors.

The debtor's arguments concerning errors in the bankruptcy court's factual basis are without moment.  Whether the Florida business was a "branch" of a Georgia company does not negate the fact that the debtor still has interests in two Georgia businesses.  Whether debtor spent "approximately eight days a month in Georgia" or

every other weekend plus the occasional mid-week day misses the point. No one factor was dispositive and those minor factual points do not undermine the totality of the circumstances.

Other evidence supports also the court's findings. Specifically, the fact that in 2006 the debtor defaulted on a significant obligation calls into question the motives for his actions occurring around and after the default. Thus, correcting his registered agent address and applying for ad valorem exemption may be viewed as posturing to protect his assets rather than a manifestation of intent to reside in Florida. In addition, the transfer of the Georgia house to his wife also may be considered in ascertaining the debtor's motives. The transfer left the Panama City Beach home as the debtor's only real estate holding. While this transfer has never been attacked, it has some bearing on the debtor's motives and could properly be weighed by the court.

The bankruptcy court applied those facts to Florida law that "a husband and wife in an <u>intact</u> marriage cannot have two homesteads." *Law v. Law*, 738 So. 2d 522, 525 (Fla. 4th DCA 1999) (emphasis added). *Cf. In re Colwell*, 226 B.R. 714 (S.D. Fla. 1998) (<u>estranged</u> husband and wife may have separate homesteads). The conclusion that the debtor ordered his affairs to keep both the Georgia and Florida homes unreachable to creditors was supported by sufficient evidence and the law. *See Reinish v. Clark*, 765 So. 2d 197, 210 (Fla. 1st DCA 2000) ("A secondary or vacation home does not implicate the same acute public policy concerns relating to the establishment and protection of a stable, financially secure primary residence.").

For these reasons, the Order of the bankruptcy court is **AFFIRMED**.

**February 29, 2012**

                                            /S/ Richard Smoak
                                            **RICHARD SMOAK**
                                            **UNITED STATES DISTRICT JUDGE**